Can we call the next case, please? The next case will be People v. Marlon Franklin. And will counsel please approach, identify yourselves, and tell us who you represent. My name is Carolyn Farquist, and I represent the appellant, Marlon Franklin. Good morning, Your Honors. My name is Haley Pack, and I represent the people of the state of Illinois. All right. And as you're aware, we have another case up this morning, and so we'll kind of keep you close to your time limits. So if you could please proceed. Good morning, Your Honors. I'd like to reserve just a few minutes for rebuttal. Three issues were raised in the briefs, and I would like to focus on the second issue, which is the illegal arrest and search of Marlon Franklin's hotel room. The evidence in this case was obtained in direct violation of Marlon Franklin's Fourth Amendment right to be free of unreasonable search and seizures as defined by two seminal cases, Payton v. New York and Schimel v. California. At the motion to suppress, the facts were uncontested, and this is what we know. Officers were called to this motel to investigate a misdemeanor theft. It was $153 that were reported missing from a lady's hotel room. She gave an identification of the offender, alleged offender. Please go down to another floor. My client is coming out of the room. They ask him, Are you so-and-so? No. But he says, That person, who we now know as Mr. Latham, is in the room. Notably, the police never ask, Can we search the room? Instead, what happens is they ask, Do you know Mr. Latham? And my client says, Yes. He opens the door because he's being cooperative. Mr. Latham's in the room. When he takes out his key card and he swipes it to get them in the door, do they have to then ask, Can we come in? Well, I think that's the ultimate consent. Well, no, I think the consent here is limited to what the question was. Where is Mr. Latham? If it's my room, he's in the room, laying on the bed, half asleep, let me open it up and you can go talk to him? Sure. But that's not a consent to search the room later on, which is what occurs shortly thereafter. Well, when someone invites police in to a dwelling, a motel room, anywhere, do the police have to say, Number one, can we come in? Number two, can we search? They have to each, not only can we come in, but then, mind if we look around? Yes, that's what the police are required to do under the Fourth Amendment. The police cannot, under patent, just enter someone's home in a hotel, which qualifies reasonable expectation of privacy. In this case, Mr. Franklin said, he's giving consent to come into the room for the specific purpose of locating Mr. Latham. Okay, so what do they see on the nightstand? Sure, so they see marijuana, they confiscate that, then what happens is Latham, who's the suspect in the theft, runs out of the room and the police officers chase him, leave the room. Had they wanted to, they could have arrested Mr. Franklin for the marijuana while they were in the room. They didn't. They left. They decided to go pursue Mr. Latham. He was the suspect in the misdemeanor case. He left. They're going to pursue that because they're investigating the theft. They know he's the suspect, not my client, and they leave. So three minutes later, according to the officer, he returns, and the door is popped open with a towel, not an invitation to come in. Supreme Court of Illinois said, you can have your door popped open. That's not a waiver of your First Amendment right to an illegal entry of your home or hotel room. So what happens is the officer, without asking my client, can I come back into the room, just enters. There's no question about this because he says he's in the room, but he sees my client coming out of the bathroom. Was there any evidence at trial that he was told, get out of here, leave me alone, you got the guy you're looking for, anything? No, but my client isn't required to do that. Each entry is looked at individually. That's what the case law says, and in this circumstance, once the police left the room, his consent, which he had given to locate Mr. Latham, dissipated. Didn't they leave it with the door left open with the towel jammed up underneath it? Yes, but that's not an invitation. I could have my door wide open. Is it just for ventilation that they did it? It doesn't matter. The door being open, Ethel Berger says that's not an invitation, it's not a waiver of your fourth minute right. No one has to close their door to prevent the police coming in. The police are not allowed to cross the threshold of one's home. And so it doesn't matter that the reason the police left was not because their search was completed or not because they had located Latham, but because one of the suspects, they now have probable cause to arrest both of them. One of the suspects bolts out of the room. But Mr. Franklin was never a suspect in the theft. We have to remember why the police are investigating in the first place. This is for a misdemeanor. And Peyton, which talks to felony arrest even more grave than a simple misdemeanor, requires that there be probable cause to arrest, and in this case, they could arrest Marion Franklin for the marijuana possession, which I note he's not even charged with. But to do so, they had to get an arrest warrant absent accident circumstances. If they're in the room and they see the marijuana in plain view on the nightstand, they can arrest him right then and there, right? Yes, they did. They could have. Yes, they absolutely could. They had probable cause to arrest him at that point. Once they left his hotel room, they vacated the premises. He regained his expectation of privacy. Regardless of whether the door is propped open or not, it doesn't have to be shut. It's not a waiver. And at that point, the officer could have called the mutual magistrate, that's what he's for, or her, and say, Oh, we found some marijuana in the room. We know who the room renter was. That was Mr. Franklin. And we want a warrant to arrest him. That should happen every day. They had probable cause to get an arrest warrant. They confiscated the marijuana. But they didn't do that. They could have easily done it in the same age. You get on your phone. However it works, it doesn't take a lengthy process. And keep in mind, too, this is for marijuana. I don't think there's an app for that. There may be at some point. There will be. But needless to say, they could have got an arrest warrant to arrest him for the marijuana possession. But instead what they do, no arrest warrant as required by Peyton. Instead, Officer Vallow reenters the room without consent, without a warrant, without exigent circumstances. Nothing's going on in that room. He, Officer, admits himself. My client's just walking out of the bathroom. Any arguable exigent circumstances left that room with Mr. Latham. He was the suspect in the misdemeanor theft, not my client. And at that point, the police were required to get an arrest warrant. Instead of doing so, the officer reenters the room. That's illegal under Peyton. Second, what he does is violate CHML, which is arrest my client. He's in handcuffs, either on the floor or on the bed. I think there was some discrepancy versus the motion to suppress testimony on the trial testimony. Needless to say, under CHML, search incident to arrest, totally permissible. But what that details is that search the person, because you're looking for weapons or evidence, and the area within their immediate control. Instead of doing that, what the officer does is go into the second room, which is the bathroom, gets on a toilet, goes into the ceiling tiles, and I know he can't even see. He sees their jar. He doesn't see a weapon sticking out. He has to reach his hand up, feel what's up there. This is not within my client's immediate control. He's in a separate room. The officer's standing on a toilet to access these ceiling tiles. What he needed to do, get a search warrant. That's what CHML requires. That's what our Fourth Amendment requires. You're not allowed to do a warrantless search of someone's home without a warrant. And that's exactly what happened here. And the officer surely could have got a warrant, called it in, but he chose not to do that. And as a consequence, there was two violations here. Payton violation, illegal arrest, entry into the room, and then CHML violation, illegal search of the room itself. There's certainly no general warrant clause. You've got to have the warrant, arrest warrant, search warrant. If the court has any other further questions, we did raise two other issues. If you have any questions on those, I'm happy to answer them. If not, okay. We'll reserve some time for rebuttal. Thank you. Ms. Peck? Good morning, Your Honors. As Your Honors are well aware, the touchstone of the Fourth Amendment is reasonableness, and reasonableness is measured by examining the totality of the circumstances. Here, the trial court properly denied defendants' motion to quash arrest and suppress evidence, where police had consent to reenter defendants' motel room, and exigent circumstances, as well as officer safety, justified the search. So tell us why the initial consent extended beyond the officer's exit from the room. Yes, Your Honor. When Officer Vallow returned to Room 301 after chasing the fleeing suspect, he reentered with continuing consent. It was reasonable that the officer believed the consent was continuing. Defendant had given his verbal, expressed consent just three minutes earlier. All of the conditions were exactly the same when Officer Vallow returned to the room. The door was still propped open. The door was still propped open using the towel that the officer had previously put in there. Only three minutes had gone by, and at no time did defendant take any action to revoke his consent. Well, but what about counsel's point that when the officers first approached Room 301, they said, we're looking for somebody who goes by the name D.B. Franklin said, oh, he's right in my room, and he lets him in the room. They find D.B. Is that a general consent for the officers to then search the room for other evidence? Your Honor, I believe that there's two exceptions to the Fourth Amendment warrant requirement that apply here, and that's exigent circumstances for the search as well as officer safety or protective search. So what are the exigent circumstances? The Illinois Supreme Court has recognized the following factors as relevant to a determination of exigency, and when balancing the factors, it's evident the police acted reasonably when they searched the ceiling. The first factor is whether the crime was recently committed. Here we have the police investigating a report of a theft. They observed possession of marijuana in the hotel room, and they observed aggravated battery to a police officer when Lathan pushes two officers out of the way as he flees through the open door of Room 301. The second factor is there's no deliberate delay on the part of the police. The only reason the police leave the room is to follow the fleeing co-offender who left under suspicious circumstances. Here the police had a reasonable belief that the offender was armed. We have a report from the victim of the theft who tells the police that D.B. or Lathan is known to be armed. It is reasonable that the thought would go through Officer Vallow's head that some type of contraband, possibly a weapon, possibly more drugs, may be in that hole in the ceiling when he returns to the room. In three minutes, we see that the ceiling tiles have been disturbed. Now there is a gap of two inches where they were previously. But once he has Franklin handcuffed and sitting on the bed, where is the exigency? The exigency comes from the location. This is occurring in a hotel. We know that there are a minimum of three stories in this hotel. We know that there are guests staying here and employees coming and going at all times. An officer with 41 years of experience can reasonably believe that contraband is hidden in the ceiling. And he does, in fact, testify to that effect at trial. The other factors that favor exigency is the police are acting on clear showing of probable cause. There is a likelihood that the defendant would flee. The police saw the suspect in the premises and here the police entered. Why do you say there is a likelihood that Franklin would flee? He didn't flee in the time that Vallow and his partner were out of the room. That is correct that he did not flee in those three minutes. But he also was not sitting there on the bed just waiting for the police to return. He was, in fact, hiding items in the ceiling tile and it appears that the police returned faster than he was anticipating. The guiding principle here is determining whether exigent circumstances exist is reasonableness and each case must be decided based on its own facts. Here exigent circumstances and officer safety permitted a search of defendant's motel room to locate a weapon that the police had a reasonable belief to believe was present. Here the police acted completely reasonable. Counsel mentions Payton and I believe Payton doesn't apply here because the police entered the room with continuing consent. For the reasons we've presented, we believe we ask for your honors to affirm the trial court where the trial court properly denied defendant's motion to quash arrest and suppress evidence where the police had consent to reenter the defendant's motel room and exigent circumstances as well as officer safety justified this search. Well, if we find that the exigency disappeared once Franklin was handcuffed down the bed and that the ceiling tiles in the bathroom were not within his immediate reach, what about counsel's suggestion that the police could have gotten a search warrant? If officer Valos sees those tiles disturbed, his 41 years of experience tell him maybe Franklin was looking up in the ceiling for something that's concealed up there. What prevented him from going to get a search warrant? Your honor, the issue here is that he didn't have to get a search warrant. To wait to obtain a warrant and leave contraband, potentially unguarded weapons that we know from the victim that the offender is known to carry, that would potentially put everyone in the hotel at risk. To leave unguarded weapons in the ceiling would be a dangerous condition. Thank you. Anything else? Anything else, sir? No, I'm good. Thank you. All right. Just a few brief points. There's no continuing consent here. Payton applies. The initial consent was to look for Mr. Latham. Latham left, so did the police at that point. The police needed to get consent to reenter the hotel room. There's no exigent circumstances whatsoever. This is a misdemeanor. He would be arrested for marijuana possession, which I know he's not even charged with. There's no founding being committed. The officer doesn't see anything. He may see the tiles up in the ceiling. There's smoke coming out of there. This is an accurate fact, the fact argument by the state, that the officer might know there's weapons up there. What about the state? Well, the victim of the robbery, sir, DB, was armed, right? Known to be armed. That's what she said, known to be armed. And he left. If he was armed, then he left. Well, if an officer has 41 years of experience that tells him that contraband, including weapons, may be concealed in movable ceiling tiles, and he's by himself now with Mr. Franklin, is he supposed to go out of the room, leave whatever's in the ceiling, could be a gun? Could be nothing. Could be nothing? That's right. Is he supposed to just leave it there? Yes. What he's supposed to do, an officer of 41 years experience, Chimmel decided in 1969, Payton in 1980, so an officer of 41 years, he knows he's supposed to get a warrant. That's what the law requires. And in this case, the trial court's denial, my client's motion to suppress, stripped him of his Fourth Amendment rights, and we ask for the reason stated in the brief, that this court reverse that order, and because there's no evidence from which the state can use to convict my client, reverses convictions. Thank you. Thank you. Thank you both for your excellent arguments, excellent briefs, and we will take the matter under advisement.